DETERMINED IN THE

# COURT OF ERRORS AND APPEALS

OF THE

## STATE OF NEW JERSEY,

AT JUNE TERM, 1872.

---

BENJAMIN F. SISSON, PLAINTIFF IN ERROR, v. JOHN E. DONNELLY, DEFENDANT IN ERROR.

1. A copy of the record of a deed of conveyance has the same effect as evidence as the deed itself; and in the absence of such deed, it is not competent to show, in a trial at law, that such copy is not a true transcript of the deed.

2. The statute puts the copy from the record on the same level with the deed itself, and if by mistake anything has been omitted from the record, the mistake must, if the deed be lost, be rectified in a court of equity.

3. A copy of the record of a conveyance purported to convey a life estate—*Held*, that on the trial at law it was not competent to show by circumstances, that it was to be inferred that the deed itself, which had been lost, contained words of inheritance so as to make the estate a fee simple.

4. Where technical words are not required, a deed of conveyance, like all other instruments, will be read by the court in the sense of the meaning of the parties.

432

5. In a tripartite deed, which conveyed the estate to the party of the second part, when it was clearly manifest that the intention was to convey to the party of the third part, and that there was a mistake in the designation of the grantee—*Held*, the intention being clear, that the proper correction could be made by construction, and that the estate was vested in the party of the third part.

On writ of error to Supreme Court.

The facts of the case are fully shown in the opinion of the court

For the plaintiff in error, *Thomas N. McCarter* and *B. Williamson.*

For the defendant in error; *I. W. Scudder* and *R. Gilchrist,* Attorney-General.

The opinion of the court was delivered by

BEASLEY, CHIEF JUSTICE. It is admitted that one Joseph P. Peters was formerly the owner in fee of the premises in dispute, both parties claiming mediately from him.

The defendants bring into court, as the primary link in their chain of title, a deed of conveyance, dated the 19th of April, 1841, from the proprietor just named, to Mortimer A. F. Harrison. The deed, in its premises, uses the following terms of conveyance, viz.: "That the said party of the first part, (who are Peters and his wife,) in consideration, &c., have sold, and by these presents do grant and convey to the said party of the second part, all that certain tract," &c. There is no *habendum*, and the convenants are in these words, to wit: "And the said Joseph P. Peters doth hereby covenant and agree, that at the delivery hereof, he is the lawful owner of the premises above granted, and seized of a good and indefeasible estate of inheritance therein," &c., "and that he will warrant and defend the above granted premises in the quiet and peaceable possession of the said party of the second part, his heirs and assigns, forever.

That an instrument thus framed will pass only a life estate to the grantee, was settled in this court in the case of *Adams* v. *Ross*, reported in 1 *Vroom* 505. That decision was rested on the clear common law doctrine that the word "heirs." is necessary, in a conveyance, to the creation of a fee simple, and that no expression of intention, in substituted terms, would have an equivalent effect. In the same judgment, it was likewise decided, that where a life estate is created, a covenant warranting the premises to the grantee and his heirs, will not enlarge the estate, nor pass, by estoppel, a greater interest than that expressly conveyed. This adjudication conclusively establishes that, reading the present deed according to the terms above recited, an estate in the lands in dispute was vested, by force of it, in the grantee, Mortimer A. F. Harrison, for his own life, and that it had no greater efficacy. Harrison, during his life, conveyed these premises in fee, and it is under this conveyance that the defendants claim to hold the property. Harrison was dead at the time of the bringing of the action; the defendants, therefore, cannot rest upon the conveyance in question, if such conveyance is to be received in the form which has been above set forth.

Upon the trial at the circuit, this deed from Peters to Harrison was introduced by the plaintiff, such evidence being necessary, on his part, in order to explain the character of the possession of the defendants and their privies, which had continued for more than twenty years. Before the writ issued, both Peters and Harrison had died, and the plaintiff had procured a conveyance in fee to himself, from the heir of the former, and he insisted that the land, during the long period which had elapsed since Peters had parted with the possession, had been held by Harrison and his grantees, as tenants of the life estate created by the deed above mentioned, dated April 19th, 1841. In making this proof, the plaintiff adduced a certified copy from the record of the deed in question, and it appeared in the case that the original deed was not to be found. In this posture of the evidence, the de-

fendants offered testimony which, they insisted, tended to show, and from which they said the jury had the right to conclude, that the record of the deed was imperfect, and that the original deed contained the terms which are requisite to convey the fee. This view was adopted by the judge at the circuit, and this judicial action is now urged as a ground of error.

The proposition which alone will maintain the legal propriety of the trial is, that as an instrument of evidence, a distinction exists between a deed of conveyance and the record of such deed. If the instrument itself had been produced, it is not pretended that it would have been competent, in a court of law, to show that anything had been left out of it by mistake. Under such circumstances, to construe it would have been the sole province of the court; not a word could have been added to or taken away from its contents. The effect of the instrument, thus construed and unmutilated, would have been conclusive upon the parties to it and their privies. As a mode of proof, this would have been the undeniable quality of the deed. But the statute which regulates the recording of conveyances, declares "that the record aforesaid, of such deed or conveyance, and the transcript of such record, certified to be a true transcript by the said clerk, in whose office the record is kept, shall be received in evidence in any court of this state, and be as good, effectual and available in law, as if the original deed or conveyance were then and there produced and proved," &c. The effect of this provision is, I think, entirely clear; it is to give the same probative force to the record as that which, according to legal rules, is inherent in the deed. As modes of testimony, they are placed on the same footing. The one, in the way of proof, is to be as efficacious as the other. The language used is not subject to the least uncertainty. The words are, that the record shall " be received in evidence in any court of this state, and shall be as good, effectual and available in law, as if the original deed or conveyance was then and there produced and proved." Now, if the original

deed in the present case had been produced, it would have incontrovertibly established the fact, that it contained the entire act or deed of the party who had executed it. Its effect would have been to exclude all attempts to show that any terms or provisions had been omitted by mistake. How then can it be insisted that the record is open to such attempts? If a word can be added to the record which cannot be added to the deed, it is obvious that the former is not as available in law as the latter. If the record of a deed which in clear legal terms limits but a life estate to the grantee, can be transformed by parol evidence, or by an induction from circumstances, into a conveyance of a fee, on the ground that it is not a true copy of the original conveyance, in what respect is the record as effectual or available in law as is the instrument which it purports to record? It seems to me that it is clear, that to thus treat the record is to degrade it from its statutory position of primary evidence to the level of merely secondary evidence. If, as a means of proof, the recorded copy is of a grade inferior to that of its original, then it would be altogether legal to show a want of correspondence between the two, because it is the rule that the subordinate proof must give place to that which is of higher authenticity. But the statute does not put the recorded copy of a conveyance on a level below that of its original, but marks them with precisely the same rank. They are both primary evidence, equal in efficacy and availability. The evident design of the statute was, when the original deed was absent, to substitute the recorded copy in its stead, giving to it the force, not of an ordinary copy, but of a counterpart. When the statute has said that the recorded copy is to be as effectual evidence as the conveyance itself, I am not able to yield to the notion that the record can be overthrown by showing that it is not a true copy of the original. The effect of such a rule would be to expose the recorded copy to all the uncertainties of parol evidence whenever the original deed had been lost by accident, or suppressed from fraud. Such a construction of the law would, I think, clash very

Sisson v. Donnelly.

greatly with the policy of our laws respecting conveyances. For it is a great mistake to suppose that the provisions of our act, which control the subject, are designed solely to provide a mode of registration of conveyances for the information and benefit of subsequent purchasers. It is true that this is an important object of the system, but it is not its only object. If this were the sole purpose, a mere registration, as is requisite in case of mortgages, would be all that would be necessary. If the law makers had nothing but a public notification in view, then the provisions, directing, with so much particularity, the conveyance to be entered word for word upon the record, together with the acknowledgments, proofs, and signatures, and the plats, surveys, and schedules, and that all interlineations and words visibly written on erasures, should be noted on the margin or at the foot of the record, are altogether superfluous. So, too, the enactment bestowing on the recorded copy the capacity of being evidence, is obviously a part of a different purpose. Reading the statute, as a whole, I think two purposes are clearly manifest; the one is to furnish a register on which vendees may rely when about to take a title, and in the second place to establish a conclusive record of the conveyance, as between vendor and vendee, in the absence of the original deed. And this latter office of the statute I think an important one, for it is to be remembered that the record of the deed is the only evidence or muniment of the conveyance which the vendor has. The vendee has the deed and the vendor has only the record to show the nature and character of his transfer. From very early times, conveyance of lands in this state has been made by deeds poll; as indentures have fallen into disuse, there are no counterparts, so that on the one side the original deed, and on the other the recorded copy, is the witness of the transaction. If the original be lost, then the recorded copy becomes conclusive on both parties, at least in a court of law, with respect to the conveyance. To hold that in case of the loss of the original deed, either party can set up before the jury that the recorded copy

is not a true copy, is, obviously, to let into the transaction all the uncertainties of parol evidence, or to trust to what Lord Coke calls "slippery memory." A striking illustration of the danger of such a practice is afforded by the defence on this point in the present case. Regarded simply in its legal aspect, the attempt is this: a deed has been duly upon record for over twenty years; that deed clearly conveys but a life estate; both the grantor and grantee to it are dead; and now the privies of the grantee claim the right, on the ground that they, or those under whom they derive title, have lost the original conveyance, to show by parol evidence, that the recorded copy is not a true copy of the deed, and that such deed, in point of fact, passed an estate in fee simple instead of a mere estate for life. Such a power would put grantors very greatly in the hands of fraudulent grantees. Such an imperfection in the system does not exist, if we give full effect to the statutory provision already quoted. That provision declares in substance that a mistake by omission can no more be predicated of the recorded copy of a conveyance than it can in the presence of the deed itself. The effect of this doctrine is that any mistake in the record, in case of the loss of the original deed, must be corrected by an application to a court of equity. I, consequently, think there was error in the admission of evidence with a view to show and amend the alleged omission in the record of this deed in a court of law.

But the case at the circuit was put upon a second ground in favor of the defence, which, if it is well founded, renders the error already commented on, of no importance to the controversy. There was a second deed in evidence, which it was held, vested a fee in the premises in question, in the before-named Mortimer A. F. Harrison, who, it has been stated, was the propositus, from whom the defendants claimed to derive their title.

The deed here referred to was dated 9th day of June, 1841, and was tripartite, being between the said Joseph P. Peters of the first part, the said Harrison of the second part, and one

William Burdon of the third part. This deed recites that the said Peters, by deed dated the 12th March, 1841, had mortgaged the premises in question to the said Burdon, and that said mortgage, "by a clerical omission," did not contain words of inheritance, but by its terms conveyed only a life estate to said Burdon; that subsequently said Peters had conveyed said premises to said Harrison, subject to said mortgage; that it was intended that said mortgagee should take a fee in said property, and that said Harrison was willing that said mortgage should be considered as vesting a fee in said Burdon. The instrument then proceeds to convey the property in the words following: "Now therefore, in consideration of the premises, and in the further consideration of the sum of one dollar, to us, the said parties of the first and second parts, in hand paid by the said party of the third part, the receipt whereof is hereby acknowledged, have granted, bargained, sold, ratified, and confirmed, and by these presents do grant, bargain, sell, ratify, and confirm unto the said party of the *second* part, his heirs and assigns forever, all and singular the above mentioned and described premises in the said indenture of mortgage mentioned, subject to the covenants and provisos therein mentioned and contained."

The mistake which exists in this deed is clearly apparent upon its face. No person can read it and fail to perceive what it is. It arises from the use of the description, "the party of the *second* part," instead of the description, "the party of the third part," as the grantee. That this was a mere slip, no one can doubt. Nor is there any more uncertainty as to the fact that the grantee was intended to be the party of the third part, *i. e.,* Burdon, the mortgagee. As the deed now reads, Harrison is both grantor and grantee, and the instrument in the clearest terms recites that its sole purpose was to pledge the property in fee to Burdon, under his mortgage. The intention of the parties is therefore clear on the face of the conveyance, the only question being whether or not the deed can be read so as to effectuate such intention.

The rule of construction, which is universal and is appli-

cable to conveyances as well as to all other kinds of deeds is, in the language of Sheppard's Touchstone, that it " be favorable and as near the minds and apparent intents of the parties as it possibly may be, and the law will permit." *Shep. Touch.*, *ch. 5, p.* 85. This has ever since and in a great multitude of cases, been recognized as the leading canon in giving effect to every variety of written instruments. In *Cholmondeley* v. *Clinton*, 2 *Jac. & W.* 1, Sir T. Plumer, Master of the Rolls, states the rule almost in the same terms. He says : " That the primary object of inquiry is the intention of the parties, and that where that is on the face of the instrument, clearly and satisfactorily ascertained, and found not to be contrary to any rule of law, the court is bound, if the words will admit of a construction conformable to the intention, to adopt that construction, however contrary it may be to technical meaning and inference." There is a long line of decisions which are illustrative of the doctrine that the words which are used will be controlled by an intention clearly expressed in the instrument to be expounded. Among these the following occupy a prominent place : *Walsh* v. *Trevanion*, 15 *Ad. & El.* (*N. S.*) 733 ; *Moore* v. *Magrath*, 1 *Cowp.* 9 ; *Thorpe* v. *Thorpe*, 1 *Ld. Raym.* 235.

It will be observed that by the limitations of the rule itself, the intention is to be enforced whenever " the law will permit." I take that to mean that the intention will prevail whenever such intention is unmistakably manifested, having regard to all parts of the instrument, unless the law requires the use of technical terms to effectuate such intention, or unless such intent is contrary to legal rules. The first of these classes of cases is aptly exemplified by the imperfect form of the deed to which I first called attention. It created but a life estate, and it was insisted that the intention was to create a fee; but such intention could not have been carried into effect, no matter how plainly apparent, because the law requires the use of certain terms of art in the creation of a fee simple. So, as an illustration of the second branch of the exception, " if one gives land to another and

his heirs for twenty years, in that case the executor, and not the heir, shall have that land after the death of him to whom it is given." *Shep. Touch.* 86. But, unless in these instances, where artificial terms are requisite, or an attempt is made to do something inconsistent with established principles, I am not aware of any exception to the rule that the intention of the party must prevail. There appears to be nothing technical in legal regulations respecting the description of the parties to written instruments. Unless a misdescription in this particular renders a deed uncertain as to its meaning, such defect is of no consequence. A plain misnomer can do no hurt, the only question being whether it is clear who is intended. The authorities strongly favor this common sense result. It has been decided that a mistake in the christian name is immaterial, if the deed explains who is intended. " A deed," says *Perkins*, § 36, " to Robert, Bishop of E., will be good, though his real name is Roland." So where a deed purported to be that of a married woman, her name only appearing as grantor, but it was signed by her and her husband, it was held to be good as a grant of husband as well as the wife. *Elliott* v. *Sleeper*, 2 *N. Hamp.* 525. And in the often quoted case of *Lord Say and Seal*, 10 *Mod.* 40, an omission by an evident mistake of the name of the grantor in a deed of bargain and sale, was supplied by intendment, " and the court was of opinion that this deed passed the freehold, because such was the intention of it." I think it is not reasonably to be denied, that if the name of a party which has been altogether omitted in the operative part of a deed, can be inserted, when read by the court, on the ground that the meaning of the instrument to that effect is clear, from the same consideration, the erroneous designation of the grantee may be rectified. In my opinion, the deed under consideration is to be read as though the grantee was described according to what the parties plainly meant, as the party of the third part. Under this construction, no title to the premises in dispute ever came to the defendants by the operation of this tripartite deed.

This result renders it unnecessary to discuss the further

question as to what would have been the effect of this latter deed if the court had been constrained to enforce it according to its letter. I will merely remark, that it has not seemed to me that such a construction would have, in any degree, furthered the defence. In such event, the grantee, Harrison, would have taken the fee in trust, defeasible on the payment of the money secured by the mortgage. A solid defence could not have been rested on this foundation.

The above views are decisive of the case as it now stands before this court. It is not necessary to pursue other topics which were embraced in the argument of the respective counsel. The facts set up by way of defence at the circuit are of equitable cognizance, and they are of no avail in a court of law.

I am of opinion that the judgment in the court below should be reversed.

*For reversal*—THE CHIEF JUSTICE, DALRIMPLE, DEPUE, SCUDDER, VAN SYCKEL, WOODHULL, DODD. 7.

*For affirmance*—CLEMENT, OGDEN. 2.

CITED in *Warner* v. *Sisson*, 2 *Stew. Eq.* 141.